059 Brescia v. McDonald Mr. Kinman, before you begin Mr. Kinman's time, as sometimes unfortunately happens, we noticed that you have a lot of the veteran's very personal private data on a number of the forms that you have not redacted it from in the joint appendix, including his social security number. There are at least almost 10 pages in which you have this information and you should have redacted it. It's my understanding our clerk's office has contacted you or tried to on multiple occasions about this but been unsuccessful in getting a hold of you. Would you like to submit a redacted version of the appendix in electronic form so that we don't have the veteran's private social security number on our web page? Yes, Your Honor. If you want, I can give you a list of the page numbers that I saw it on if that would help you. I can go through it again, Your Honor. I apologize for that. Okay. So please do that. And what day is it? Monday. Why don't you, can you have it to us no later than Friday so that because we have an obligation to make things public and so we'll keep it off the website until then and as soon as you submit a redacted version, we'll post that instead. Again, I will stop at the clerk's office as well after this. Very good. Thank you. May it please the court. Again, my name is Max Kinman and I represent the appellant, David Brescia. There's two issues here before the court that I'm asking you to decide. First issue is whether the holding of Buchanan v. Nicholson and the accompanying statutes and regulations applied as lay statements in the context of a claim for post-traumatic stress disorder, specifically whether lay statements and lay evidence can be submitted to substantiate a claim and claim stresses. I guess I don't really even understand your citation to that case because here the board didn't say they weren't qualified to testify. The board simply looked at the nature of the testimony and found that it didn't really support the position. For instance, you've got somebody who says, well I heard from someone else that something else occurred and the board just said that's just not enough. You never said the mere fact that it's a lay person testifying means it's not enough. Well the issue here is that the board and the veterans court found that the lay statements alone were not enough to substantiate the claim. Well they didn't believe them. As Judge O'Malley says, they looked at it and said hearsay. But they did not believe them solely because there was no documented medical evidence of the record, which is the exact same holding of Buchanan. Well it wasn't the medical part they didn't believe, it was the service connection that they weren't buying. In other words, they just felt that it did not support the notion that Mr. Brescia was actually exposed to these incidents. I would argue that the board's holding and the court's holding was that the lay statements lacked credibility and they lacked credibility because there was no in-service documentation. On page 8, 10, and 11 of the board's opinion, it says, quote, little if any probative weight as the statements do not provide sufficient information to corroborate that Mr. Brescia experienced the claims stressors. The whole problem is there's nobody to document whether it be in writing or in oral testimony that he witnessed icicles falling down and killing people, bulldozers going over tents and destroying people. There's no question that the man has PTSD, there's no question he had military service. The question is they're unable to document any of these events even occurring, much less that he witnessed these events because simply being present at a base where something happened that you didn't witness wouldn't give rise to a stressor, but they can't even establish there's no evidence that these events even occurred. There aren't military medical records of the individuals who were harmed by the falling icicles or the bulldozer, so there's nothing. Those witnesses that came along, they just said, one of them said, oh yeah, I heard that stuff happened too, but also didn't have any first-hand knowledge of either the events or whether Mr. Brescia was present there. Maybe it was just an unfortunate use of the word document when they said that they can't document it, but they were clearly looking at the lay testimony. Well, I think they were looking at the lay testimony, but they completely disregarded three separate independent buddy statements from individuals who served in the same unit. But they didn't disregard them. They paid attention to them, and they said, there's nothing in the history, not medical history, there's nothing in the history that indicates this event occurred. Which is the same thing as denying that those lay statements exist. No, it's not. It's the same thing as downgrading those lay statements. If you're going to say that lay statements solely don't have credibility... Look, if somebody says, here, here's a hearsay statement, and the board looks at it and says, well, let's see if we can find anything that supports this. That doesn't mean that they're downgrading. It means they're saying, well, this is inherently unbelievable, but maybe we can find something that shows that it was true. Hearsay is always inherently unbelievable. In this context, we're not dealing with hearsay statements. You are dealing with some hearsay statements. When somebody says, I heard that something occurred from someone else, isn't that hearsay? In this context, there were icicles that fell and impaled two fellow soldiers. The only people that could witness that were the two soldiers that passed away. No, that's not true. There could be people who witnessed the bodies. There could be people who witnessed them being treated medically. There could be all kinds of things. Let's just take these body statements. One of them, the board said, we can't even find any evidence to corroborate that D.D. I don't know, I assume these are initials, the gentleman, ever even served with the appellant at this particular location. This is the guy that remembers he heard something about that happening, didn't witness it, and they couldn't even find evidence that he ever served with this individual at that particular location. That would segue into the second argument being that they didn't request the proper records in violation of the remand orders. For D.D., they specifically requested in the remand orders, okay, we have a statement from D.D. Let's determine whether or not he served with the veteran. Let's determine whether or not he served with the appellant. They asked the records center, they asked the NPRC, but unfortunately in their request, they only asked whether or not D.D. served with the appellant in Company B. Where they got that information from, who knows? The board, and then the Veterans Court finds that, well, that's complying with the remand orders, and now the board, you're okay to downgrade this. I can understand why you're expressing some dissatisfaction with that, and I understand your argument completely. If we had jurisdiction over things like that, that would be a very compelling statement. The problem is we don't. That's whether or not they comply with the remand order is a question of fact, and whether or not they asked for service records for the whole company versus a particular platoon, I know I'm not getting these words right, just bear with me. That's all factual, and Congress didn't see fit to give us the authority because you could be 100% right and probably are about everything you're saying right now, but I don't see how I have the authority to give you any relief based on that particular failure of the VA. A factual question is how much did the court comply with the orders? This is not a factual question here. The orders were clear. Determine whether or not Dede served with the appellant. You agree that Brescia served in Company B. Brescia served in Company B, yes, certainly. In Dede's own statement, he says, I think I might remember you. He obviously doesn't even remember serving with the appellant. The point of Dede's statement is that he served at the same time and he remembered those exact same incidents occurring to bolster Mr. Brescia's statement. He doesn't need to specifically remember Mr. Brescia. There's no dispute. Did he remember the incidents occurring or did he remember hearing about something that might have occurred? Either way, it's the same thing. That bolsters whether or not the incidents actually happened or not. If you have a soldier who served in a remote base up in Alaska and remembers incidents of fellow service members being harmed or killed, that is some sort of positive, factual statement. There are a lot of things I heard in the Army that I couldn't say actually occurred. But if you have three separate statements bolstering your claim, I think... But Mr. Brescia himself never even says he witnessed any of these things. He said he walked past the icicle place later and it creeped him out. But he doesn't say that he was in the zone to witness these things, correct? Certainly. And that's not the... The issue here is not whether him walking past the icicles just before they fell is enough to qualify for a claim for post-traumatic stress disorder. We can't even get to that level if the board and the court says, well, these events didn't happen, which is basically what is happening here. The board says, we're going to completely downgrade these stressors because there's no evidence in the record that they occurred. But there is evidence in the record that they occurred. You have three independent lay witnesses. Now they didn't have first-hand knowledge. They weren't one of the service members that were killed, but they did serve at this base. They did hear about these incidents. Well, with one of them, we don't know if he served at the base. There isn't evidence of that. And then going back, Judge Moore, to your point, what can we do if there's a remand that's not complied with? I would assert and strongly assert that that is a clear due process violation. If there's an order from an administrative agency, from the Board of Veterans' Appeals, and that board orders the VA to do something, and those orders are just simply ignored, simply not complied with, and then later on the case is adjudicated, how is that not a due process violation? No, that's not, number one, that's not actually what happened here. They were ordered to ascertain whether D.D. served with the veteran at issue. And they went back and performed a too narrow search and concluded he didn't serve with them. There's no evidence of him serving with them. And your argument is, factually, that's because you didn't look broadly enough. You should have looked at this whole group, and you didn't. So I mean, a due process violation, it's a really big deal. I understand. It's a constitution. You know, you don't just, so they did comply with the Rand Order, they just didn't comply perfectly. Well, we're not asking for them to look for the entire records from, you know, 19, whatever it was, 1969 to 1971, for every individual who served in the military. They were simply ordered to determine whether or not D.D. served on that same base as the appellant. That's not asking too much. And if they disregard that and they only search for Company B because they only want to search Company B, I don't, you know, unless they completely just disregard the orders, I don't know what a greater due process violation could be. When there's an order from the board specifically saying, determine whether or not D.D. served with the appellant. That was the orders. And they frankly just don't do that. The VA just ignores it.  Well, we're into your rebuttal time. Yes, ma'am. Why don't we give the government a chance? Thank you. Mr. Yale. May it please the court, as we laid out in our brief, Mr. Brescia has failed to identify any issue with the Veterans Court decision that falls within the jurisdiction of the court. Why don't you start with the due process claim that he ended with? Why isn't it a due process violation if there's a remand order that says, decide whether these two men served together? Well, certainly, Your Honor, Mr. Brescia fails to discuss the Diamond versus Precipice case that we mentioned in our brief, which essentially says that complying with the remand order, it involves making factual determinations or at the very least, applying law to the facts. Yes, but when we have a constitutional issue, we're allowed to dig into the facts, correct? Under our jurisdiction. Is that right? Sure. That is possible. But also just labeling something a due process issue doesn't actually make it a due process issue. So why is this not a due process issue? Well, what this has to do with is actually complying with the remand order, which involves a number of factual determinations that were made by the board. Nothing has been pointed out as to why any sort of that process would ever reach the level of a due process issue. How many companies were on the base at the time? How many companies were on the base at the time? Well, I don't know specifically that information. From the documents, it's apparent that there were at least two battalions, which I would assume could be anywhere from 500 to 1,000 soldiers each battalion. So potentially as many as 2,000 soldiers, but the record doesn't reflect exactly how many soldiers were serving at Fort Wainwright during that time. But Mr. Brescia never argued that these incidents were isolated to his company, did he? He said they occurred at the base. Well, yes, Your Honor, he said they occurred at the base, but I think if you actually look at the remand order, which is at JA-266, what it says is, attempt to verify through official sources whether D.D. served with the veteran at Fort Wainwright, Alaska in 1970 with the headquarters and headquarters company 808th Engineer Battalion. And so it's saying to attempt to make that verification. Then at JA-268, we have the requests that were actually made. One of those requests at the bottom of JA-268 is, please attempt to verify if the veteran's engineer reported the deaths of two soldiers due to falling icicles on March 1, 1970. Also please attempt to verify if a, I will call him D.D., was serving with the 808th Engineer Battalion at Fort Wainwright in Fairbanks, Alaska. So in this situation where they're making the request, there is no limitation to Company B. The Company B limitation comes later with regards to certain morning reports that were suggested by JSRRC to be made. So certainly there were at least general requests made by the VA to JSRRC to try to determine whether D.D. actually served in the entire battalion, served at Fort Wainwright. Again, back to the question about the due process violation, I mean what we have is with this remand order and Mr. Brescia is not challenging the standard, which would be a legal issue with regards to whether or not substantial compliance was the standard or whether the board said it could be minimal compliance. Essentially he's just asking this court to make factual determinations with regards to what exactly the VA did in complying with this remand order. As I, as we just pointed out, we think if it ever got to that point that the VA did substantially comply, but as reflected in the Diamond v. Principi case, we certainly do not think that that's an issue that this court has jurisdiction to entertain. We'd also like to address the issue of the lay testimony. What the board did was perfectly appropriate. It needs to, in order to evaluate a PTSD claim, there needs to be credible evidence. Certainly the board went through and made credibility findings as to these statements. It looked at the statement of the veteran D.C., which essentially said that he had heard stories, which are certainly hearsay, and they pointed to that as a reason to downgrade the credibility and probative value of that statement. That veteran, there's no evidence that he witnessed this event happen. He heard it second or third hand. The same is true of the testimony from the veteran D.D. There's been a number of efforts made to attempt to determine whether D.D. actually served at the time of Mr. Brescia, but those were unsuccessful. And so we have... Did anybody ask D.D. for his discharge records that might show that? Well, if we could go back to the remand order at JA-266 to answer your question. Under 2 on JA-66, it says, and this is from the board, it says, if insufficient information is a record to verify such, ask the veteran to provide evidence that he and D.D. served together in 1970. The VA reached out to Mr. Brescia, asking for that information, and it's apparent from the record that Mr. Brescia never responded. So the VA attempted to reach out to obtain that information from Mr. Brescia, who may have some information, if he was a buddy, as to when he served, and additional information. There are any further questions? Your Honor, then we ask that the court dismiss Mr. Brescia's appeal for lack of jurisdiction. Thank you, Mr. Rudolph. Mr. Kinman? Thank you, Your Honor. Back to HARP on the Buchanan issue, I would point to the joint appendix on page 320. The board in this decision is clear. The board states, the veteran filed his claim for PTSD in 2002. The board finds the veteran's assertions while seeking service connection are simply less persuasive and credible than his service personnel records and the military records, which fail to document the alleged stressor events, as well as the lack of any mental health problems until 2002. What the board is doing, they're not weighing the evidence here. The board is saying that you have lay evidence, and that lay evidence is not persuasive simply because there is no documentation in the service medical records to support your claim. And that is the exact problem that existed in Buchanan. In Buchanan, this court held that you can't do that. In Buchanan, the veteran had submitted buddy statements, the exact same type of buddy statements, from friends who served with him, that showed that he was experiencing mental health problems while he was in service. The board in Buchanan did almost the exact same thing. They said, well, we're going to disregard those buddy statements because there's nothing in the service medical records. That's what the board is doing in this case. They're simply disregarding the lay evidence, and they're not judging its credibility. They're just simply disregarding it. Let's read the two sentences before the one you quoted. It says here, the veteran's claim stressors could not be verified. While the veteran submitted buddy statements, there's no evidence corroborating that D.D. served with the veteran. In addition, the statement from V.C. noted that he recalled hearing stories about the icicle incident and bulldozer incident, but a statement clearly reflects that he did not witness the events or have any first-hand knowledge of them. Neither statement provided dates or names of the individuals involved, and neither statement establishes that the veteran witnessed the alleged incidents. I mean, they're not saying that, by definition, lay statements can't be enough in the absence of documentation that might be destroyed. What they're saying is these lay statements were not enough. And he says, V.C. says, I heard stories about, let me read from it, about large falling icicles that killed two men coming out of the Haines Hall back door one winter. In other words, it looks to me like he's saying, don't know which winter that was, I just heard stories that that happened one winter. So is the difference here, then, if there would have been a buddy statement to state, I saw the icicles fall, and the board still says, well, there's nothing in the service medical records, then that's a violation of Buchanan? What's the difference? How can you weigh the difference between a competent statement and an incompetent statement? But the board is not finding that they're incompetent. The board is simply downgrading the probative value of these statements. That's the point. They didn't find them to be incompetent. And Buchanan, let me read to you from Buchanan. This is a direct quote from Buchanan. This is not to say the board may not discount lay evidence when such discounting is appropriate. Rather, the board as fact finder is obligated to and fully justified in determining whether lay evidence is credible in and of itself because of possible bias, conflicting statements, et cetera. Nor do we hold the board cannot weigh the absence of contemporary medical records against the lay evidence of record. I just don't think Buchanan stands for the proposition that you want it to. I mean, Buchanan stands for the proposition that the board can still evaluate how much weight to give these lay evidence. And that seems like what they did here. Well, you know, in regards to when the lay evidence is weighed, this is not a case where we have any evidence against the veteran's claim. We don't have Social Security records or a post-service incident or the veteran misrepresenting these incidents later on. The only evidence in the claim supports the veteran. You have his statements. An absence of documentation is in itself evidence. And that's Buchanan because Buchanan says the absence of service medical records cannot be the only thing that the board uses to deny the claim. But the absence of records that say that, gee, we had two guys killed at this unit, you know, those kinds of things are reported. Not always, Your Honor. I beg your pardon? They're not always reported, Your Honor. They require a board of inquiry. And certainly when they are reported, often those records are lost or unavailable. You know, in this claim, all the evidence points in favor of the veteran, and there's nothing opposite of it other than the lack of records. Okay. I thank both counsel. The case is taken under submission. That ends our hearing for today. All rise.